## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 7 |
| MICHAEL J. PALMIERI, | BK No. 21-09761 |
| Debtor, | Hon. Janet S. Baer |
| RICHARD FOGEL, not personally but solely in his capacity as the duly appointed chapter 7 trustee for the estate of MICHAEL J. PALMIERI, | |
| Plaintiff, | |
| v. | Adv. No. 22-177 |
| SPECIALTY INDUSTRIES II, LLC, *et al.*, | Hon. Janet S. Baer |
| Defendants. | |

### RESPONSE TO DEFENDANTS' MOTION TO DISMISS

As alleged in the trustee's complaint, from 2003 to 2007, the Debtor committed federal tax fraud. In 2005, to avoid his mounting debts to the IRS, the Debtor purported to convey his home—6021 Byron Street in Rosemont, Illinois, PIN Nos. 12-04-218-024 & 12-04-218-025 ("Byron Property")—to a phony Delaware entity called Series Rosemont. Series Rosemont transacted no business (it did not even exist on the date of conveyance), was controlled by the Debtor, and in fact was the Debtor's alter ego. In 2010 and 2011, the Debtor was indicted, pleaded guilty to, and pursuant to that plea was later convicted of tax fraud. To frustrate the IRS and other creditors,

in July 2014, the Debtor caused his alter ego Series Rosemont to convey the Byron Property to defendant Specialty Industries II, LLC ("Specialty Industries II"), an entity 100% owned by his girlfriend, defendant Karen Witt ("Witt"). In July 2015, as more creditors surfaced, Specialty Industries II conveyed the Byron Property to Witt outright. And in 2019, as the IRS resumed its interest in the Debtor, Witt conveyed the property to defendant Nicholas Recchia, as trustee of the Byron Street Land Trust ("Land Trust"). The Bryon Property has, at all relevant times, remained the Debtor's primary residence.

Here, the Trustee seeks to avoid the July 2014 conveyance from the Debtor's alter ego, Series Rosemont, to Specialty Industries II as actually and constructively fraudulent under 11 U.S.C. § 544(b) and the UFTA, and to hold Witt and the Land Trust liable as subsequent transferees, so that the Byron Property may be sold to benefit the Debtor's creditors. Under well-established law governing reverse veil piercing, Series Rosemont was the Debtor's alter ego, meaning that the Byron Property remained part of the Debtor's estate in July 2014. Moreover, section 544(b) allows the Trustee to benefit from the longest statute of limitations available to any of the Debtor's creditors—the so-called "golden creditor." *In re Kaiser*, 525 B.R. 697, 709-14 (Bankr. N.D. Ill. 2014). Here, the IRS has filed a claim for $874,447.17 [Dkt. 1 ("Compl.") ¶ 43], and the statute of limitations for collection of an assessed tax is generally ten years. 26 U.S.C. § 6502(a)(1).

Defendants make two arguments. First, defendants ignore the golden-creditor issue, and insist that the applicable statute of limitations is the four-year provision

2

contained in the UFTA. [Dkt. 16 ("Mot.") ¶¶ 9-15.][1] As shown below, that is wrong. Second, defendants ignore the Trustee's alter ego allegations, and assert that the Byron Property was not part of the Debtor's estate in July 2014 because Series Rosemont had title to the property on paper. [*Id.* ¶¶16.] As shown below, this ignores controlling law about reverse veil piercing.

## I.      The Trustee's factual allegations

On October 14, 1997, Norma Jean Weiner quitclaimed the Byron Property to the Debtor. [Compl. ¶ 17.] The Byron Property became, and remains, the Debtor's primary residence. [*Id.* ¶ 18.] He lives there with his girlfriend, Karen Witt ("Witt"). [Dkt. 10 (proof of service showing Witt's address as the Byron Property).]

### A. The Debtor began a tax fraud scheme in 2003.

The Debtor was a 24.5% owner and CFO of Nationwide Environmental, Inc. ("Nationwide"). [*Id.* ¶ 19.] Beginning in 2003, the Debtor began filing with the IRS false quarterly tax forms (Form 941) understating the taxable wages of Nationwide's employees. [*Id.* ¶ 20.] Starting in 2004, the Debtor began filing with the IRS false tax returns significantly underreporting his income. [*Id.* ¶ 21.] The Debtor continued to file false 941s and individual returns until 2007. [*Id.* ¶¶ 20-21.] The Debtor would later admit in his plea agreement in his tax fraud prosecution that from 2003 to 2007 he underreported $1,167,000 in personal income and caused a loss to the government of $847,447.17. [*Id.* ¶¶ 21-22.]

---

[1]      On January 17, 2023, Specialty Industries II and Witt filed a motion to dismiss. [Dkt. 16.] On January 24, 2023, Recchia joined that motion. [Dkt. 23.] To simplify matters, the Trustee will refer to the motion alone. Recchia makes no independent arguments.

**B. The Debtor transferred the Byron Property to Series Rosemont, his alter ego.**

On September 14, 2005, to hide the Byron Property from the IRS, the Debtor formed Specialty Industries, LLC ("Specialty Industries") as a Delaware series LLC and executed a warranty deed purporting to transfer the Byron Property to Series Rosemont, a series purportedly existing under Specialty Industries. [Compl. ¶ 24.] Series Rosemont, however, did not exist on September 14, 2005. Specialty Industries established it nearly two months later, on November 8, 2005. [*Id.* ¶¶ 25-28.]

As alleged in the Trustee's complaint, many facts show Series Rosemont was the Debtor's alter ego, including:

- Series Rosemont's series agreement and ownership structure gave the Debtor complete control over it.

- Series Rosemont's sole business (as expressly stated in its series agreement) was to hold title to the Byron Property. The Debtor's records do not show it doing anything else.

- The Debtor did not conduct Series Rosemont's business in accordance with the formalities required by the Delaware Limited Liability Company Act, beginning with the fact that it was not even formed when the Debtor purported to convey the Byron Property to it. The Debtor's records show no meetings, votes, or distributions.

- Based on the Debtor's records, Series Rosemont paid no consideration for the Byron Property.

- The Debtor continued to live in the Byron Property after conveying it to Series Rosemont and did not sign a lease or pay rent to Series Rosemont.

[*Id.* ¶29.]

4

### C. The Government indicted the Debtor for tax fraud and the Debtor pleaded guilty.

On April 29, 2010, a federal grand jury indicted the Debtor for 21 counts of tax fraud for underreporting the wages of Nationwide employees and his own income. [Compl. ¶¶ 30-31.] On October 14, 2010, the Debtor pleaded guilty and agreed to pay the IRS restitution of $673,031. [*Id.* ¶ 32.] The plea agreement expressly stated it did not prevent the IRS from collecting additional taxes, interest, and penalties. [*Id.*] On January 13, 2011, the district court sentenced the Debtor to six months of home confinement and ordered restitution of $673,031. [*Id.* ¶ 33.]

### D. In 2014, the Debtor transferred the Byron Property to an entity 100% owned by his girlfriend, Witt.

On January 2, 2011, eleven days before his criminal sentencing, the Debtor and his close friend, Joseph Macchitelli, transferred 100% of their interests in a Colorado LLC that they co-owned, Specialty Industries II ("Specialty Industries II"), to Witt, the Debtor's girlfriend. [Compl. ¶ 34.] In July 10, 2014, the Debtor filed a lawsuit in Cook County, in which he was represented by Cohon Raizes & Regal, LLP ("CRR"), and, it appears, began incurring debts to CCR. [*Id.* ¶35.] On July 21, 2014, The Debtor, through his alter ego Series Rosemont, quitclaimed the Byron Property to Specialty Industries II for no consideration. [*Id.* ¶ 36.]

### E. When creditors pursued the Debtor in 2015, Witt caused Specialty Industries II to transfer the Byron Property to herself.

In late 2015, a creditor named David E. Feldman claimed that the Debtor owed him on a personal loan. On December 28, 2015, Feldman filed suit against the Debtor in Cook County. [Compl. ¶ 37.] In the same period, on October 19, 2015, Specialty

5

Industries II quitclaimed the Byron Property to Witt without receiving reasonably equivalent value. [*Id.* ¶ 38.]

### F. When the IRS again pursued the Debtor, Witt conveyed the Byron Property to the Land Trust.

The IRS investigation resumed in late 2019. On October 22, 2019, the IRS issued a subpoena to Bank of Bourbonnais to discern whether the Debtor continued to maintain control of the Byron Property. [Compl. ¶40.] On November 14, 2019, Witt filed an action in the Northern District of Illinois seeking to quash the subpoena, which was assigned to Judge Dow. [*Id.*] On April 28, 2020, Judge Dow denied the motion to quash. [*Id.*]

On August 30, 2019, in this same period when the IRS likely was communicating with the Debtor and his bank, Witt purported to convey the Byron Property by warranty deed to Nicholas R. Recchia in his capacity as trustee of the Land Trust. [*Id.* ¶ 41.]

### G. The Debtor sought bankruptcy protection.

On August 19, 2021, the Debtor filed the underlying chapter 7 case. [Compl. ¶ 42.] The IRS, Feldman, and CRR filed claims; the IRS claim is for $874,447.17. [*Id.* ¶¶ 43-45.]

### II.     Argument

Defendants seek dismissal under Fed. R. Civ. P. 12(b)(6), made applicable in this adversary proceeding by Fed. R. Bankr. P. 7012(b). "A motion to dismiss tests the sufficiency of the complaint; its purpose is not to decide its merits." *In re Equip. Acquisition Res., Inc.*, 502 B.R. 784, 791 (Bankr. N.D. Ill. 2013). "To survive such a

motion, a complaint must allege sufficient facts which, if true, would raise a right to relief above the speculative level, showing that the claim, upon which the complaint is predicated, is plausible on its face." *Id.* "To be plausible on its face the complaint must plead facts sufficient for the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Here, defendants do not challenge the factual sufficiency of any element of the Trustee's complaint. Instead, they make two arguments, easily disposed of under controlling law.

### A. Section 544(b) allows the Trustee to use the ten-year period applicable to the IRS.

Defendants first assert—based solely on citations to the UFTA's text—that the Trustee's claims are time-barred under the UFTA's four-year statute of limitations. [Mot. ¶¶ 9-11.] Defendants provide brief arguments that Counts I & II are not subject to the discovery rule and that the Trustee cannot invoke equitable tolling. [*Id.* ¶¶12-14.] But, somewhat puzzlingly, they do not address the golden-creditor issue under 11 U.S.C. ¶ 544(b), other than to say: "There is no case law in this jurisdiction that provides that a Chapter 7 Trustee can utilize the statute of limitations afforded to the United States Department of Treasury (i.e., the Internal Revenue Service) to pursue claims under Sections 5(a)(1) or 5(a)(2) of the UFTA." [*Id.* ¶ 11.]

Defendants are wrong. Section 544(b) provides that "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under

7

section 502(e) of this title." 11 U.S.C. 544(b). Under this section, "[a]n avoidance action under section 544(b) is timely if the unsecured creditor's claim was timely under the applicable nonbankruptcy law at the time the bankruptcy petition was filed." *In re Kaiser*, 525 B.R. at 708.

Many courts have held that if the IRS is a creditor seeking collection of back taxes, section 544(b) allows a trustee to avail itself of the ten-year limitations period available to the IRS in collection actions under 26 U.S.C. § 6502(a)(1). *In re Kaiser*, 525 B.R. at 709-14; *accord In re Omansky*, No. 18-13809 (LGB), 2022 WL 4281472, at *9 (Bankr. S.D.N.Y. Sept. 15, 2022); *In re Smith*, No. 19-40964, 2022 WL 1814415, at *6 (Bankr. D. Kan. June 2, 2022); *In re Musselwhite*, No. 20-00928-5-SWH, 2021 WL 4342902, at *10 (Bankr. E.D.N.C. Sept. 23, 2021); *In re Gaither*, 595 B.R. 201, 210 (Bankr. D.S.C. 2018); *In re Kipnis*, 555 B.R. 877, 883 (Bankr. S.D. Fla. 2016).

Accordingly, the Trustee may avoid fraudulent transfers of the Byron Property by the Debtor within 10 years of the petition date. Specifically, the Trustee may avoid the 2014 transfer of the Bryon Property by the Debtor's alter ego, Series Rosemont, and all fraudulent transfers thereafter.

### B. Delaware law allows the Trustee to assert a reverse veil-piercing claim seeking the Byron Property.

Defendants next argue that the Court should dismiss because "[t]he Debtor did not own the Byron property that was transferred by Specialty Industries, LLC [really: Series Rosemont] to Specialty Industries II, LLC on July 21, 2014[,]" as "[t]he Debtor [had] transferred the interest in the Byron Property to Specialty Industries, LLC on September 14, 2005, when Specialty Industries, LLC was formed." [Mot. ¶ 16.] At the

8

threshold, that is not quite right. The Trustee alleged (based on the relevant corporate documents) that Series Rosemont wasn't formed until November 2005, about two months *after* the purported conveyance from the Debtor to Series Rosemont. Whether Series Rosemont's corporate existence can be backdated to September is a fact issue that cannot be resolved on a motion to dismiss.

More to the point, defendants ignore the obvious thrust of the Trustee's complaint. The Trustee asserts that Series Rosemont was the Debtor's alter ego. A trustee may bring a reverse veil-piercing claim seeking an order treating the assets of the debtor's alter ego as belonging to the debtor for purposes of turnover and fraudulent transfer claims, on the theory that, because the entity was the debtor's alter ego, *the property never left the estate. In re Wolf*, 595 B.R. 735, 764-70, 789-90 (Bankr. N.D. Ill. 2018) (applying Illinois and Delaware law), *affirmed by In re Wolf*, 644 B.R. 725, 751-52 (N.D. Ill. 2022).

Veil piercing is governed by the law of the state of incorporation. *In re Canopy Fin., Inc.*, 477 B.R. 696, 702 (N.D. Ill. 2012). Here, Specialty Industries is a Delaware series LLC organized under the Delaware Limited Liability Company Act. 6 Del. C. § 18-215. Delaware recognizes third-party reverse-piercing claims seeking to obtain the assets of an LLC. *Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 713-14 (Del. Ch. 2021); *see also In re Broadstripe, LLC*, 444 B.R. 51, 102 (Bankr. D. Del. 2010) (applying Delaware veil-piercing law to LLC); *Geyer v. Ingersoll Publications Co.*, 621 A.2d 784, 793 (Del. Ch. 1992) ("a court can pierce the corporate veil of an

entity [i.e., not just a corporation] where there is fraud or where a subsidiary is in fact a mere instrumentality or alter ego of its owner").[2]

The only question is whether the Trustee alleges sufficient facts to state a reverse veil-piercing claim. The Trustee's allegations are sufficient. *Manichaean Cap, LLC* stated the test for a reverse veil-piercing claim:

> The natural starting place when reviewing a claim for reverse veil-piercing are the traditional factors Delaware courts consider when reviewing a traditional veil-piercing claim—the so-called "alter ego" factors that include insolvency, undercapitalization, commingling of corporate and personal funds, the absence of corporate formalities, and whether the subsidiary is simply a facade for the owner. The court should then ask whether the owner is utilizing the corporate form to perpetuate fraud or an injustice.

251 A.3d at 714-15. Here, the Trustee alleges that the Debtor had complete, formal control over Series Rosemont, did not comply with required formalities under Delaware law (including forming the entity *after* it supposedly received its sole asset), conveyed the Byron Property to Series Rosemont for no consideration, and continued to treat the Byron Property as his own, even using it as his primary residence after each fraudulent transfer. [*Id.* ¶29.] That is enough to state a claim for alter ego liability at this stage of the litigation, especially where, as here, defendants do not specifically challenge the factual sufficiency of the complaint.

---

[2]    There had been some disagreement about the availability of this kind of claim among the bankruptcy judges of this district because Delaware had not yet resolved the issue. *See, e.g., In re Glick*, 568 B.R. 634, 661 (Bankr. N.D. Ill. 2017) (dismissing reverse-piercing claims because Delaware had not yet recognized reverse piercing). The Court of Chancery's decision in *Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694 (Del. Ch. 2021), puts the issue to rest. *Manichaean Cap., LLC*, 251 A.3d at 719, specifically rejects the argument about the LLC charging statute alluded to in defendants' motion. [Mot. ¶ 16.]

10

### III.   Conclusion

The Court should deny the motion. One last issue deserves comment. Defendants chose not to address either the golden creditor or alter ego issues in their motion, even though they are the main thrust of the complaint. They cannot now use their reply brief to raise arguments that they should have raised in their opening brief. *Hunt ex rel. Chiovari v. Dart*, 612 F. Supp. 2d 969, 974 (N.D. Ill. 2009) ("reply briefs are for replying, not for raising matters that should have been in the opening brief"); *accord Hussein v. Oshkosh Motor Truck Co.*, 816 F.2d 348, 360 (7th Cir. 1987). The Court should therefore disregard any such arguments raised in the reply and deny the motion.

Dated: February 15, 2022

RICHARD FOGEL, not personally but solely in his capacity as the duly-appointed chapter 7 trustee for the estate of MICHAEL J. PALMIERI

By:   /s/ *Jonathan M. Cyrluk*
One of His Attorneys

Jonathan Cyrluk (ARDC No. 6210250)
Joshua Goldberg (ARDC No. 6277541)
Steven Moeller (ARDC No. 6290263)
CARPENTER LIPPS & LELAND LLP
180 North LaSalle Street, Suite 2105
Chicago, Illinois 60601
312-777-4300 (tel)
312-777-4839 (fax)
cyrluk@carpenterlipps.com
goldberg@carpenterlipps.com
moeller@carpenterlipps.com

## CERTIFICATE OF SERVICE

I, Jonathan M. Cyrluk, an attorney, hereby certify that on February 15, 2023, I caused a copy of the foregoing to be served by email on counsel for defendants, Ariel Weissberg, via the Court's CM/ECF system, which served it on the following email addresses:

ariel@weissberglaw.com
hava@weissberglaw.com
rakesh@weissberglaw.com
oleh@weissberglaw.com
6010998420@filings.docketbird.com

_/s/ Jonathan M. Cyrluk_
Jonathan M. Cyrluk
CARPENTER LIPPS & LELAND LLP
180 North LaSalle Street, Suite 2105
Chicago, Illinois 60601
312-777-4826 (tel)
312-777-4839 (fax)
cyrluk@carpenterlipps.com

_Counsel for Plaintiff_